CRENSHAW *v.* A. F. SHAPLEIGH HARDWARE COMPANY.

Opinion delivered March 11, 1907.

CONSPIRACY—EXCLUSION OF EVIDENCE—PREJUDICE.—Where it is undisputed that plaintiff's agent fraudulently sold goods of plaintiff to defendant at exceedingly low prices, it was not prejudicial error to exclude evidence that such agent had in like manner sold plaintiff's goods to other merchants at very low prices.

Appeal from Pope Circuit Court; *William L. Moose,* Judge; affirmed.

*George O. Patterson, R. B. Wilson, J. W. Coffman, A. S. McKennon,* and *Murphy, Coleman & Lewis* for appellant.

1. The court erred in denying to appellant the right to examine witnesses with reference to representations made by Binley to retail merchants in his territory that his house had bought a large bankrupt stock at 40 per cent. of its value, and proposed to sell them to its customers at prices correspondingly low. And it was also error to refuse to permit the cross examination of appellee's witnesses on the same subject. The question involved was one of knowledge, motive and intent. 2 H. Bl. 288; 132 Ind. 398; 82 Me. 512; 169 Ill. 40; 117 U. S. 591; 68 Ill. 541. The rule favors admitting in evidence every fact and circumstance

having probative value, or which tends to prove or disprove a fact in issue, unless it is calculated to create undue prejudice against, or to surprise, the opposite party, or to create a confusion of issues. 1 Greenleaf, Ev. 16 Ed., § § 13a, 14a; 11 Ga. 465; 14 Ga. 65; 147 U. S. 150. If facts and circumstances sought to be shown are the effect of the same cause, or show, or tend to show, the existence of a course of operation or dealing embracing the transaction in issue, they are admissible. *Supra;* 181 Mo. 173; 3 Enc. of Ev. 125.

*Chas, C. Reid, J. E. Cravens, J. T. Bullock* and *W. E. Atkinson* for appellee.

BATTLE, J. This action was brought by A. F. Shapleigh Hardware Company against W. V. Hamilton in his lifetime. Plaintiff states, in its complaint and amendment thereof, that it is a corporation organized and doing business under the laws of the State of Missouri, and that the defendant was a merchant at Clarksville, in this State, and traded with the plaintiff, and during the year 1895 purchased goods of it through one W. J. Binley, and that by a combination between them a large quantity of the goods of plaintiff were shipped to and received by the defendant at Clarksville, and were converted by him to his own use, with the intent on their part to defraud, cheat and swindle plaintiff; that the same was accomplished through a system of false invoices whereby a great portion of the goods were never charged to the defendant, and whereby other portions of the goods were charged at prices greatly below their real value and plaintiff's prices for the same, and thereby damaged the plaintiff in the sum of $2,799.33.

Defendant answered and admitted that he purchased goods of plaintiff through Binley, and his receipt of them, but denied "the alleged combination between him and Binley to defraud plaintiff, and his conversion of the goods, and any and all knowledge of any false or fraudulant invoices, under charges and omissions to charge"; and alleged "that in all defendant's transactions with plaintiff through Binley he dealt honestly and fairly, was ignorant of any purpose of Binley to cheat or defraud plaintiff through any system of false invoice or otherwise, and

that he made full payment for all the goods he purchased or received from it through Binley."

At the trial in this action it was shown that plaintiff was a hardware merchant in St. Louis, Missouri, and W. J. Binley was one of its traveling salesmen, and sold goods for it in the State of Arkansas; that the defendant was a merchant at Clarksville, in this State, and traded with plaintiff for many years through Binley. During the year 1895, the defendant received from the plaintiff goods, "through the fraudulent manipulations of Binley, of the value of $2,666.33, which were not charged at the time on plaintiff's books, and for which it received no pay." Binley fraudulently deprived plaintiff of the goods without its knowledge, and caused the same to be shipped to the defendant, and they were received and used by him. There was evidence adduced which tended to prove that all this was done with the consent, knowledge and approval and participation of the defendant, and was the result of a combination between him and Binley. It would require much time, labor, thought and space to set out all this evidence; and as it will serve no useful purpose, we will not do so. It is not for us to decide the questions of fact submitted to the jury, but to ascertain if there was evidence, if true, legally sufficient to sustain the verdict.

In the progress of the trial the defendant offered to prove by Will Quail, of Ozark, in this State, that, early in the fall of 1895, he bought goods of plaintiff, through W. J. Binley, at extremely low prices, from 40 to 50 per cent. below the regular wholesale prices, and that Binley told him that plaintiff was able to sell at such prices because it had bought the goods as a bankrupt stock, and wished to give its customers the benefit of the low prices; and this evidence, over objection of plaintiff, was rejected. Similar testimony of other witnesses was offered by the defendant and rejected by the court.

The court instructed the jury, in part, over the objections of the defendant, as follows:

"4. An agent employed to take orders for the purchase of the goods of his principal, the goods not being in his possession, and to be delivered by his principal upon his approving a sale at the prices and upon the terms proposed in the order to the party giving it, has not authority to receive the price for the goods

when so sold and delivered; and such payment by the purchaser to the agent soliciting such order will not discharge the purchaser from his liability to the principal unless there is a known usage of trade or course of business to justify him in making it, or unless the principal is shown to have actually received the money so paid by the purchaser to the agent."

"5. An agent so employed to take orders for the purchase of the goods of his principal not in his possession, the goods to be delivered by the principal upon his approval of the price and terms proposed in the order, in no event, without express authority, can receive money from the parties giving the orders in advance of such approval, and thereby bind his principal. In such case the sale is incomplete, and the purchaser, in intrusting the agent with the money in advance of his purchase, to be applied when completed, makes him his agent; and if the money is not paid by the agent to his principal, it is the purchaser's loss, and no payment has been made."

"6. When an agent has authority to collect bills for goods sold by his principal through him or otherwise, he can not receive anything other than money in payment, unless expressly or impliedly impowered to do so by the principal; and when not so impowered, the receipt of checks or anything else than money in payment is not binding upon the principal, unless he ratifies his acts in so accepting and receiving something else than money, when advised thereof."

"7. An agent known to be such who has express authority to collect bills from the debtors of his principal for goods sold through him or otherwise can not accept in part or full payment of such bills the satisfaction of his own debts, without the express or implied assent of his principal, and the fact of his agency does not imply assent."

"9. If the jury believe from the evidence that by a combination between the defendant and W. J. Binley goods were shipped from the store and warehouse of the plaintiff, and that by a system of false invoices they were placed at greatly reduced values, and that the defendant, W. V. Hamilton, with the knowledge of these facts, or with the knowledge of sufficient facts to have put him, as a reasonable person, upon notice of fraud involved in it, received and used said goods, and did not pay the

full and actual value of the goods, then the jury will find for the plaintiff in a sum equal to the difference between the amount paid by W. V. Hamilton and their real value."

"10. The court instructs the jury that if the defendants ever made any payment to Binley upon the pretence that it was for the A. F. Shapleigh Hardware Company, and that the same was made before any orders were sent in for the goods he pretended to pay for, and before the plaintiff had accepted the same and ordered the goods shipped, the same was not a payment to the Shapleigh Hardware Company, and that W. J. Binley for that purpose received the money as agent for the defendant, W. V. Hamilton."

"11. If the jury believe from the evidence that from its general course of dealings with Binley the defendant had knowledge of the fact that he was not dealing honestly with his house, and that the defendant took advantage of such facts for his own benefit in his transactions with the house, then the defendant will be held to have participated in the frauds and wrongdoings of the said Binley, and should be so considered."

"12. Fraud is never presumed, but must be affirmatively proved. The law presumes that all men act fair and honestly, that their dealings are in good faith and without intention to wrong, cheat or defraud others, until such presumption is overcome by a preponderance of evidence; and unless you find by a preponderance of the evidence that defendant, W. V. Hamilton, had the transactions complained of with plaintiff's agent, Binley, with the intention and purpose of defrauding plaintiffs of their goods, or with knowledge that Binley had such purpose and intention, then your verdict will be for the defendant."

The court instructed the jury, in part, at the request of the defendant, as follows:

"1. The complaint charges, in effect, that the defendant and its agent, W. J. Binley, combined and conspired together to defraud plaintiff of its goods and property; and unless this is proved by a preponderance of the evidence, you should find for the defendant.

2. The burden is upon the plaintiff to prove that the defendant and W. J. Binley entered into a fraudulent combination to fraudulently deprive it of its goods or property, or some por-

tion thereof; and unless the plaintiff has made this proof by a preponderance of the evidence, you should find for the defendant."

The jury returned a verdict in favor of the plaintiff for $1,700 with interest at six per cent. per annum from August 28, 1895; and the defendant appealed.

Since the appeal the appellant has died, and the action has been revived against his executors.

The only object or effect of the rejected testimony was to show that Binley sold the goods of appellee to other merchants at exceedingly low prices. That he sold to appellant at such prices is an undisputed fact, and his motive and intent in so doing is unquestioned. The appellant was not prejudiced by the rejection of the testimony.

Appellant states his objections to the 4th, 5th, 6th, 7th and 10th instructions, given over the objections of the defendant, as follows: "Said instructions were based on the theory that if appellant had paid the whole of the price at which he bought the goods from Binley, part of such payment being made to Binley, appellee would be entitled to recover unless it was proved that appellee received the money so paid Binley, regardless of whether there was any combination or conspiracy between appellant and Binley or not, and regardless of the fact that the appellee's pleading placed its sole claim of right to recover on the existence of such combination or conspiracy. They were therefore erroneous." This objection is not tenable. Appellant alleged in his answer that he paid in full for all the goods he purchased or received from appellee, and adduced evidence for the purpose of proving the allegation. In these instructions the court undertook to tell the jury that in certain cases, and under certain circumstances, or in a certain way, Binley had no authority to collect the prices of goods sold by him for the appellee, and further did not instruct the jury; but, in instructions given at the request of the appellant, did tell the jury: "The complaint charges, in effect, that the defendant and its agent, W. J. Binley, combined and conspired together to defraud plaintiff of its goods and property; and unless this is proved by a preponderance of the evidence, you should find for the defendant." So there is no reasonable ground upon which to base appellant's objection.

The objection of appellant to the ninth instruction, given over his objection, as we understand it, is that it "ignored the issues raised by the pleadings," that is, the issue joined by the allegation of appellee that there was a fraudulent combination between Binley and appellant to cheat and defraud appellee and the denial thereof by appellant. The objection is not correct. If by a combination between appellant and Binley, as stated in the instruction, goods were shipped from the store and warehouse of appellee, and "by a system of false invoices they were placed at greatly reduced prices," and Hamilton, with the knowledge or notice of these facts, received the goods under such invoices at such prices and used them, and never paid the full and actual value of the same, there was a combination formed to cheat and defraud the appellee; and the issues joined by the pleadings were not ignored by the instruction. It (instruction) was substantially correct, and was in no way prejudicial to appellant.

The 11th instruction, given over the objection of appellant, undertook to say when the appellant will be held to have participated in the frauds and wrongdoings of Binley, and, when read and construed in connection with instruction numbered twelve and the first and second given at the request of appellant, as it should have been, was not objectionable.

Many requests of appellant for instructions to the jury were refused, but these, so far as correct and applicable, were covered by instructions given.

The evidence was sufficient to sustain the verdict of the jury.

Judgment affirmed.